Kantrowitz, Goldhamer & Graifman, P.C.
Gary S. Graifman, Esq. (Bar No.: 007621994)
135 Chestnut Ridge Road, Suite 200
Montvale, NJ 07645
(201) 391-7000
Attorneys for Plaintiff

=========================================X

ERIC BENITEZ,

                Plaintiff,

   -against-

CALIFORNIA PIZZA KITCHEN, INC.,

              Defendant.

=========================================X

SUPERIOR COURT OF
NEW JERSEY
LAW DIVISION
BERGEN COUNTY

Docket No.: BER-L-004773-21

CIVIL ACTION SUMMONS

**FROM THE STATE OF NEW JERSEY, TO THE DEFENDANT NAMED ABOVE:**

The plaintiff, named above, has filed a lawsuit against you in the Superior Court of New Jersey. The complaint attached to this summons states the basis for this lawsuit. If you dispute this complaint, you or your attorney must file a written answer or motion and proof of service with the deputy clerk of the Superior Court in the county listed above within 35 days from the date you received this summons, not counting the date you received it. (A directory of the addresses of each deputy clerk of the Superior Court is available in the Civil Division Management Office in the county listed above and online at http://www.judiciary.state.nj.us/pro se/10153_deptyclerklawref.pdf.) If the complaint is one in foreclosure, then you must file your written answer or motion and proof of service with the Clerk of the Superior Court, Hughes Justice Complex, P.O. Box 971, Trenton, NJ 08625-0971. A filing fee payable to the Treasurer, State of New Jersey and a completed Case Information Statement (available from the deputy clerk of the Superior Court) must accompany your answer or motion when it is filed. You must also send a copy of your answer or motion to plaintiff's attorney whose name and address appear above, or to plaintiff, if no attorney is named above. A telephone call will not protect your rights; you must file and serve a written answer or motion (with fee of $175.00 and completed Case Information Statement) if you want the court to hear your defense.

If you do not file and serve a written answer or motion within 35 days, the court may enter a judgment against you for the relief plaintiff demands, plus interest and costs of suit. If judgment is entered against you, the Sheriff may seize your money, wages or property to pay all or part of the judgment.

If you cannot afford an attorney, you may call the Legal Services office in the county where you live or the Legal Services of New Jersey Statewide Hotline at 1-888-LSNJ-LAW (1-888-576-5529). If you do not have an attorney and are not eligible for free legal assistance, you may obtain a referral to an attorney by calling one of the Lawyer Referral Services. A directory with

contact information for local Legal Services Offices and Lawyer Referral Services is available in the Civil Division Management Office in the county listed above and online at
http://www.judiciary.state.nj.us/prose/10153_deptyclerklawref.pdf

**Michelle M. Smith, Esq.**
Clerk of the Superior Court

DATED: July 20, 2021

Name and Address of Defendant to Be Served:

California Pizza Kitchen
1 Garden State Plaza, Suite 2320
Paramus, New Jersey 07652

Kantrowitz, Goldhamer & Graifman, P.C.
Randy J. Perlmutter, Esq. (Bar No.: 018042000)
135 Chestnut Ridge Road, Suite 200
Montvale, NJ 07645
(201) 391-7000
Attorneys for Plaintiff

SUPERIOR COURT OF
NEW JERSEY
LAW DIVISION
BERGEN COUNTY

-------------------------------------------------X
ERIC BENITEZ,

            Plaintiff,

-against-

CALIFORNIA PIZZA KITCHEN, INC.,

            Defendant.
-------------------------------------------------X

Docket No.:

COMPLAINT

Plaintiff, Eric Benitez ("Mr. Benitez" or "Plaintiff"), by his undersigned counsel, as and for his Complaint against Defendant, California Pizza Kitchen, Inc. ("Defendant" or "CPK"), hereby alleges as follows:

## NATURE OF THE ACTION

1. Defendant, a nationwide chain-restaurant operating a location in Paramus, NJ, forced Plaintiff to return to work while positive with the COVID-19 virus and symptomatic, over Plaintiff's objection, causing him to work in close contact with coworkers, customers, and the general public.

2. Before Plaintiff returned to work, and without Plaintiff's knowledge or consent, Defendant's manager, Rob Ferranti ("Ferranti"), falsely informed Defendant's human resources department that Plaintiff was no longer infected.

3. Mr. Ferranti's statement was untrue as Plaintiff had never tested negative for COVID-19 and told Mr. Ferranti he had recently tested positive.

4. Within a week of returning to work, Defendant terminated Plaintiff premised upon performance issues that allegedly occurred while he was working and still suffering from COVID-19 symptoms.

5. Plaintiff complains pursuant to the New Jersey Law Against Discrimination ("NJLAD"), codified as N.J.S.A. § 10:5-1, *et seq.*, section 12:70 of the New Jersey Administrative Code ("NJAD"), the Federal Families First Coronavirus Response Act ("FFCRA"), the New Jersey Earned Sick Leave Law ("ESLL") and any other cause of action which can be inferred from the facts set forth herein, seeking damages to redress injuries which Plaintiff has suffered as a result of being discriminated against due to being diagnosed with COVID-19.

## PARTIES

6. Plaintiff, Eric Benitez, at all times relevant herein, was an individual residing in Nanuet, Rockland County, New York. Plaintiff was employed by Defendant in the State of New Jersey.

7. Defendant, California Pizza Kitchen, Inc., at all relevant times, was a corporation with its principal place of business located at 6053 West Century Boulevard, 11th Floor Los Angeles, California 90045-6438. Defendant operates, regularly and continuously conducts business, employed Plaintiff, and services its customers in New Jersey. Specifically, Defendant operates a location at 1 Garden State Plaza Blvd, Suite 2320, Paramus, NJ 07652, at which Mr. Benitez worked. Defendant obtains significant revenue from its business operations conducted in the New Jersey.

## FACTUAL BACKGROUND

### Mr. Benitez's Employment with Defendant

8. In January 2020, Defendant hired Mr. Benitez as a manager at the CPK in Scarsdale, New York.

9. In September 2020, Mr. Benitez was transferred to the Paramus, New Jersey location ("CPK Paramus").

10. At all times Mr. Benitez was fully qualified for his position.

11. The Paramus CPK location had approximately 50 employees.

12. From the date of his hire until his illegal termination on February 4, 2021, Mr. Benitez performed as a stellar employee and had no performance issues.

13. Due to the COVID-19 pandemic, Defendant instituted policies overseen by its corporate Human Resources Department ("HR") to manage employees who either tested positive, were experiencing symptoms, or were exposed to someone who had contracted the COVID-19 virus.

14. Defendant's individual restaurants were responsible for having all employees fill out surveys every day that they entered work. In these surveys, employees were required to affirm, among other things, whether they had tested positive for COVID-19, had any COVID-19 symptoms or were exposed to anyone who was diagnosed with COVID-19.

15. If an employee responded "Yes" to any questions on the survey or their temperature was too high, which was part of a wellness check, then it was supposed to be reported to HR and HR was supposed to call the restaurant and inform management to send the employee home because he or she failed the wellness check.

16. Every day that Mr. Benitez went into work, he was subject to, and answered, these surveys and had his temperature taken.

17. HR was responsible for keeping track of whether employees tested positive for the virus and contact tracing for all employees to help prevent the spread of COVID-19 to other employees and patrons and make sure that infected employees did not come into work.

### CPK's Failure to Follow Protocols

18. During the COVID-19 pandemic, as detailed above, CPK Paramus was subject to testing and surveying protocols from CPK's corporate HR Department.

19. CPK Paramus originally followed those protocols.

20. However, once some employees contracted the COVID-19 virus, CPK Paramus strayed from the mandated policies.

21. General Manager Mr. Ferranti instructed employees at CPK Paramus to refrain from telling HR all the coworkers they came in contact with if they ever tested positive for COVID-19.

22. In December 2020, one of the cooks at CPK Paramus tested positive for COVID-19.

23. Assistant Manager Chad (last name unknown) instructed one of the cook's coworkers, Willian (cook), to lie to the HR Department regarding whether he came in contact with the cook who tested positive for COVID-19, as a way of making sure that he was not prevented from coming into work.

24. Th following Monday, Mr. Ferranti told Mr. Benitez that he agreed with Chad's instruction to Willian to lie about coming in contact with the worker who tested positive for COVID-19.

Case 2:21-cv-16286-JXN-ESK   Document 1-2   Filed 08/30/21   Page 7 of 16 PageID: 13

BEH-L-004773-21   07/19/2021 2:17:35 PM   Pg 5 of 13   Trans ID: LCV2021...

25. Over the course of the next two to three months, approximately ten employees contracted the COVID-19 virus.

### Mr. Benitez's Health Issues and Furlough from Work

26. During the week of January 14, 2021, several other CPK Paramus employees were sick and tested positive for COVID-19.

27. On January 13, 2021, Mr. Benitez began feeling COVID-19 symptoms, including a sore throat and fever, among other symptoms.

28. On January 14, 2021, Mr. Benitez tested positive for COVID-19.

29. Mr. Benitez immediately made Defendant aware of his positive test by calling Mr. Ferranti.

30. That same day, Area Manager Will Delacruz called Mr. Benitez and told him that HR would be contacting him and that he would be furloughed until he could return.

31. Later that day, HR called Mr. Benitez and told him to stay out of work until he tested negative and symptom-free, at which time he would be able to return to work.

32. As a result of testing positive, Mr. Benitez was instructed to quarantine for a minimum of 10 days or until he no longer tested positive and did not exhibit any symptoms.

33. For the next two weeks, Mr. Benitez quarantined and did not work as he was still symptomatic.

34. Defendant furloughed Mr. Benitez during the period he was out of work for illness.

35. After two weeks, Mr. Benitez still exhibited a fever and was suffering from other COVID-19 symptoms. He informed his employer of such.

### Mr. Benitez's Return to Work and Pretextual, Unlawful Termination

36. On January 24, 2021, unbeknownst to Mr. Benitez, Mr. Ferranti emailed HR that Mr. Benitez was symptom free and able to return to work.

37. This statement was untrue, as Mr. Benitez still had not tested negative and was still suffering from COVID-19 symptoms.

38. On January 25, 2021, Mr. Ferranti contacted Mr. Benitez to tell him to return to work on January 28, 2021.

39. Mr. Ferranti told Mr. Benitez that he was cleared to return to work by HR.

40. Upon information and belief, if HR actually "cleared" Mr. Benitez to return to work, it was based upon the email from Mr. Ferranti in which he falsely stated that Mr. Benitez had been symptom-free.

41. As of January 26, 2021, Mr. Benitez still exhibited other COVID-19 symptoms, which he explained to Mr. Ferranti.

42. Mr. Ferranti seemingly did not care that Mr. Benitez was still sick, and forcefully told him to get back to work by January 28, 2021.

43. As Mr. Benitez felt pressured to return to work due to Mr. Ferranti's comments, on January 26, 2021, Mr. Benitez took a COVID-19 test, which he again failed as per the results he received on January 28, 2021.

44. Also, on January 28, 2021, Mr. Benitez received a call from the Center for Disease Control ("CDC") who instructed him to remain in quarantine and to not work.

45. Due to the positive test, Mr. Benitez called Mr. Ferranti and told him he tested positive and was not able to work. Despite this, Mr. Ferranti still instructed Mr. Benitez to return to work that day.

46. Due to the pressure from Mr. Ferranti, on January 28, 2021, Mr. Benitez returned to work at CPK Paramus.

47. Mr. Benitez would have been unable to pass the wellness check, so Mr. Ferranti instructed him to lie on the forms, thus allowing him to work.

48. Mr. Benitez worked from January 28 to January 31, while he continued to exhibit COVID-19 symptoms. During this time, Mr. Benitez was not able to work to the best of his ability due to his illness.

49. As a way of trying to avoid getting any other coworkers or patrons sick, Mr. Benitez tried to socially distance and wore a mask at all times.

50. On January 31, 2021, Mr. Ferranti instructed Mr. Benitez that he performed poorly at work the day prior. Mr. Benitez explained that he was still suffering from COVID-19 and was not able to fully perform his job functions until fully better.

51. At no point did anyone tell Mr. Benitez that his job was in jeopardy.

52. Mr. Benitez was never presented with any documentation regarding any issues with his performance.

53. On February 4, 2021, Mr. Benitez came to work and inadvertently saw the false January 24 email from Mr. Ferranti to the HR Department.

54. Shortly after arriving to work that day, Mr. Ferranti brought Mr. Benitez into the manager's office for a meeting with Area Manager Will Delacruz (who attended via phone) and terminated him.

55. Mr. Ferranti and Will told Mr. Benitez that he was being terminated due to poor performance.

56. After he was terminated, Mr. Benitez called HR and told them that he had never tested negative for COVID-19 despite being told to return to work.[1]

57. Thus, Mr. Benitez was terminated within a week of returning to work after contracting COVID-19, while he was still suffering from the virus, and during a period when he was being forced to work while sick.

58. The member of HR who spoke with Mr. Benitez told him that they would not challenge his unemployment and would not provide a negative reference to any prospective employers.

59. At the time of his termination, Mr. Benitez was a covered employee under the FFCRA.

60. At the time of Mr. Benitez's termination, Defendant was a covered employer under the FFCRA.

61. Mr. Benitez still had not tested negative for COVID-19 at the time of his termination.

62. As a result of the unlawful termination, Mr. Benitez has been harmed financially and emotionally.

## AS AND FOR THE FIRST COUNT
(Disability/Perceived Disability Discrimination in Violation of the NJLAD)

63. Plaintiff realleges and incorporates all allegations in all preceding paragraphs as if set forth in full herein.

64. Defendant engaged in unlawful acts of discrimination based upon Plaintiff's disability and/or perceived disability, namely, terminating Plaintiff based upon his disability

---

[1] Mr. Benitez did not call prior to this date because he had been unaware of Mr. Ferraro's email to HR.

8

65. Plaintiff, by virtue of his improper termination, suffered extreme emotional distress as a result thereof. Plaintiff also suffered damage to his reputation and career, humiliation, loss of pride, loss of confidence and respect, loss of pleasure of association, loss of pleasure of career and professional achievements, loss of standing, loss of dignity, loss of promotion and advancement, loss of past and future compensation, medical benefits, pension benefits, and other pecuniary benefits associated with Plaintiff's employment.

66. Moreover, Plaintiff suffered extreme distress, anxiety, and physical and/or physiological pain and suffering as a result of the illegal and discriminatory acts.

67. If Defendant is not, as alleged, directly liable for the conduct and violations of law, then Defendant is vicariously liable under principles of agency and/or respondeat superior.

68. The foregoing conduct violated New Jersey's Law Against Discrimination, N.J.S.A. § 10:5-12, *et seq.*, making it unlawful to discriminate based on Plaintiff's disability.

69. Defendant's acts described herein, constituted willful discrimination and/or reckless and/or grossly negligent conduct against Plaintiff on the basis of his disability.

70. By virtue thereof, Plaintiff has been injured in a sum to be determined by the trier of fact and as requested hereinafter and also seeks punitive damages in an amount to be determined by the trier of fact.

## AS AND FOR THE SECOND COUNT
(Wrongful Termination in Violation of Public Policy)

71. Plaintiff realleges and incorporates all allegations in all preceding paragraphs as if set forth in full herein.

72. On March 20, 2020, Assembly Bill No. A3848 was signed into legislation, which prohibited an employer from terminating or refusing to reinstate an employee who takes time off of work due to an infectious disease. Specifically, Bill No. A3848 states that an employer may not

9

"terminate or otherwise penalize an employee if the employee requests or takes time off from work based on the written or electronically transmitted recommendation of a medical professional . . . that the employee take that time off for a specified period of time because the employee has . . . an infectious disease . . .which may affect others at the employee's workplace."

73. As per Pierce v. Ortho Pharm. Corp., 84 N.J. 58 (1980), an employee has a cause of action where an employer discharges an employee contrary to a clear mandate of public policy.

74. There is a common law cause of action for civil redress for a retaliatory termination for contracting an infectious disease that is specifically declared unlawful by Bill A3848.

75. As per Bill A3848, it is clear that there is a public policy against terminating employees due to contracting infectious diseases.

76. Defendant, by terminating Plaintiff in response to his testing positive for COVID-19 and taking time off as per Center for Disease Control ("CDC") guidance, has violated Bill A3848 and the common law set forth in Pierce.

77. As a result of Defendant's actions, Plaintiff was made to suffer extreme and severe emotional distress, humiliation, anxiety, physical and physiological pain and suffering, loss of pride, damage to his reputation and career, loss of confidence and respect, loss of pleasure of association, loss of pleasure of career and professional achievements, loss of dignity, loss of promotion and advancement, loss of past and future compensation, medical benefits, pension benefits, and other pecuniary benefits associated with Plaintiff's employment. By virtue thereof, Plaintiff has been injured in a sum to be determined by the trier of fact and as requested hereinafter and seeks punitive damages in an amount to be determined by the trier of fact.

## AS AND FOR THE THIRD COUNT
### (Violation of the Families First Coronavirus Response Act)

78. Plaintiff realleges and incorporates all allegations in all preceding paragraphs as if set forth in full herein.

79. Under the FFCRA, employers are prohibited from discharging, disciplining, or discriminating against any employee who take leave in accordance with the Act.

80. Defendant, by terminating Plaintiff in response to his testing positive for COVID-19 and taking leave due to his diagnosis and the effects of the virus, has violated the FFCRA.

81. By virtue thereof, Plaintiff has been injured in a sum to be determined by the trier of fact and as requested hereinafter and seeks damages in an amount to be determined by the trier of fact.

## AS AND FOR THE FOURTH COUNT
### (Violation of the New Jersey Earned Sick Leave Law)

82. Plaintiff realleges and incorporates all allegations in all preceding paragraphs as if set forth in full herein.

83. As per N.J. Stat. Ann. § 34:11D-4, the ESLL prohibits employers from retaliating or discriminating against any employee who "requests or uses earned sick leave."

84. Defendant, by terminating Plaintiff in response to his taking earned sick leave in relation to his COVID-19 diagnosis, has violated the ESLL.

85. By virtue thereof, Plaintiff has been injured in a sum to be determined by the trier of fact and as requested hereinafter and seeks damages in an amount to be determined by the trier of fact.

**PRAYER FOR RELIEF**

WHEREFORE, Plaintiff demands the following relief against Defendant:

a. Back pay, front pay, general and special damages for loss of compensation and job benefits that he should have received, but for the discriminatory and retaliatory practices of Defendant, and from emotional distress, anxiety, physical and physiological pain, humiliation, embarrassment, and anguish according to the proof;

b. Compensatory and punitive damages;

c. Reasonable attorney's fees and expert witness fees and the cost of this lawsuit;

d. Prejudgment interest; and

e. Such other and further relief as to the Court may appear just and proper.

**JURY DEMAND**

Plaintiff hereby demands a trial by jury.

Dated: July 15, 2021
Montvale, New Jersey

                                                      KANTROWITZ, GOLDHAMER
                                                      & GRAIFMAN, P.C.

                                                      */s/ Randy J. Perlmutter*
                                                      Randy J. Perlmutter

## DESIGNATION OF TRIAL ATTORNEY PURSUANT TO R. 4:5-1

Randy J. Perlmutter is hereby designated as trial counsel.

KANTROWITZ, GOLDHAMER
& GRAIFMAN, P.C.

_____
Randy J. Perlmutter

## CERTIFICATION PURSUANT TO R. 4:5-1(B)(2)

I certify that this matter is not the subject of any other action pending in any other Court or of any pending arbitration proceeding and that no such action or arbitration proceeding is contemplated, and that, to the best of my knowledge, information, and belief, there are no other parties who should be joined in the action pursuant to R. 4:28.

I certify that the statements in the preceding paragraph are true. I am aware that if these statements are willfully false, I am subject to punishment.

_____
Randy J. Perlmutter

Dated: July 15, 2021

13



BER-L-004773-21   07/19/2021 2:17:35 PM   Pg 1 of 2   Trans ID: LCV20211688085

# Civil Case Information Statement

## Case Details: BERGEN | Civil Part Docket# L-004773-21

**Case Caption:** BENITEZ ERIC VS CALIFORNIA PIZZA KIT CHEN
**Case Initiation Date:** 07/19/2021
**Attorney Name:** RANDY JAY PERLMUTTER
**Firm Name:** KANTROWITZ GOLDHAMER & GRAIFMAN, PC
**Address:** 135 CHESTNUT RIDGE RD STE 200 MONTVALE NJ 07645
**Phone:** 2013917000
**Name of Party:** PLAINTIFF : Benitez, Eric
**Name of Defendant's Primary Insurance Company (if known):** Unknown

**Case Type:** LAW AGAINST DISCRIMINATION (LAD) CASES
**Document Type:** Complaint with Jury Demand
**Jury Demand:** YES - 12 JURORS
**Is this a professional malpractice case?** NO
**Related cases pending:** NO
**If yes, list docket numbers:**
**Do you anticipate adding any parties (arising out of same transaction or occurrence)?** NO

**Are sexual abuse claims alleged by: Eric Benitez?** NO

---

**THE INFORMATION PROVIDED ON THIS FORM CANNOT BE INTRODUCED INTO EVIDENCE**
CASE CHARACTERISTICS FOR PURPOSES OF DETERMINING IF CASE IS APPROPRIATE FOR MEDIATION

Do parties have a current, past, or recurrent relationship? YES

If yes, is that relationship: Employer/Employee

Does the statute governing this case provide for payment of fees by the losing party? YES

Use this space to alert the court to any special case characteristics that may warrant individual management or accelerated disposition:

Do you or your client need any disability accommodations? NO
   If yes, please identify the requested accommodation:

Will an interpreter be needed? NO
   If yes, for what language:

Please check off each applicable category: Putative Class Action? NO  Title 59? NO  Consumer Fraud? NO

---

I certify that confidential personal identifiers have been redacted from documents now submitted to the court, and will be redacted from all documents submitted in the future in accordance with *Rule* 1:38-7(b)

07/19/2021                                      /s/ RANDY JAY PERLMUTTER
Dated                                                              Signed